[Cite as *Brooks v. RKUK, Inc.*, 2022-Ohio-266.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| KRISTINA BROOKS | : | JUDGES: |
| | : | |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2021CA00048 |
| | : | |
| RKUK, INC., ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2020CV00599


JUDGMENT:      AFFIRMED


DATE OF JUDGMENT ENTRY:      January 28, 2022


APPEARANCES:

For Plaintiff-Appellee:

JAMES J. COLLUM
Law Office of James J. Collum, LLC
4740 Belpar St. NW, Suite C
Canton, OH 44718

For Defendants-Appellants:

KEVIN J. BREEN
Kevin J. Breen Co., LLC
3500 West Market St., Suite 4
Fairlawn, OH 44333

*Delaney, J.*

{¶1} Defendants-Appellants Rakesh Patel and RKUK, Inc. appeal the April 1, 2021 and April 12, 2021 judgment entries of the Stark County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Default Judgment

{¶2} On March 24, 2020, Plaintiff-Appellant Kristina Brooks filed a complaint in the Stark County Court of Common Pleas against Defendants-Appellants Rakesh Patel and RKUK, Inc. dba Woodlawn Food Market, owned by Rakesh Patel (hereinafter the Defendants-Appellants shall be collectively referred to as "Patel"). The complaint alleged nine causes of action: (1) quid pro quo sexual harassment; (2) hostile work environment sexual harassment; (3) retaliation; (4) intentional infliction of emotional distress; (5) assault and/or battery; (6) violations of O.R.C. § 4113.15, 44113.99; (7) violations of O.R.C. § 4111.02, 4111.04, and 4113.10; (8) violations of the Fair Labor Standards Act; and (9) false imprisonment.

{¶3} Brooks requested service of the complaint by U.S. certified mail. On March 24, 2020, the Stark County Clerk of Courts docketed that the complaint was sent by certified mail. On April 14, 2020, the docket noted that certified mail had failed because Patel refused service. Brooks requested service of the complaint by ordinary mail, which the Clerk of Courts completed on April 21, 2020. The Clerk of Courts served the summons upon Patel pursuant to Civ.R. 4, whereby the summons included the following language:

> YOU HAVE BEEN NAMED A DEFENDANT IN A COMPLAINT FILED IN
> STARK COUNTY COURT OF COMMON PLEAS.
>
> * * *

A COPY OF THE COMPLAINT IS ATTACHED HERETO.

* * *

YOU ARE HEREBY SUMMONED AND REQUIRED TO SERVE UPON THE PLAINTIFF'S ATTORNEY, OR UPON THE PLAINTIFF, IF HE HAS NO ATTORNEY OF RECORD, A COPY OF AN ANSWER TO THE COMPLAINT WITHIN TWENTY-EIGHT DAYS AFTER THE SERVICE OF THIS SUMMONS ON YOU, EXCLUSIVE OF THE DAY OF SERVICE. YOUR ANSWER MUST BE FILED WITH THE COURT WITHIN THREE DAYS AFTER THE SERVICE OF A COPY OF THE ANSWER ON THE PLAINTIFF'S ATTORNEY.

IF YOU FAIL TO APPEAR AND DEFEND, JUDGMENT BY DEFAULT WILL BE RENDERED AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

{¶4}   Brooks filed a motion for default judgment on May 21, 2020, stating service of the complaint was completed by ordinary mail and Patel had not answered the complaint or otherwise made an appearance in the action. Due to Patel's default, she requested judgment in her favor on all claims alleged in the complaint and a damages hearing. On July 29, 2020, the trial court granted the motion for default judgment and set the matter for a damages hearing on October 23, 2020. The judgment entry was served upon Patel by ordinary and certified mail. On August 7, 2020, the docket noted that Patel refused certified mail service of the default judgment entry.

**Patel's Appearance**

{¶5} On August 8, 2020, counsel for Patel filed a notice of appearance in the action. Patel filed a motion to vacate/motion to reinstate, supported by his affidavit, on August 24, 2020. He did not cite any basis for the motion from the Rules of Civil Procedure, case law, or statute. In the motion, Patel admitted he was served with the complaint but did not understand legal proceedings. He stated he was a native of India. He had never been involved in a court case before and believed the court would let him know when he had to be there. He also disputed Brooks' allegations in the complaint.

{¶6} Brooks filed a response to Patel's motion to vacate and argued the trial court should consider it a motion for relief from judgment pursuant to Civ.R. 60(B). As such, Patel failed to meet the *GTE* requirements, Brooks contended, when Patel failed to show he had a meritorious defense or claim to present if relief was granted.

{¶7} On September 29, 2020, the trial court denied Patel's motion to vacate. After considering the motion to vacate as a motion for relief from judgment under Civ.R. 60(B), the trial court found that Patel failed to meet two elements of the *GTE* test necessary to prevail under Civ.R. 60(B). First, Patel failed to establish there was a meritorious defense to Brooks' claims other than the blanket statement in his affidavit that her allegations were not true. Second, Patel's failure to respond to the complaint did not demonstrate mistake, inadvertence, surprise, or excusable neglect. Patel actively refused certified mail service of both the complaint and the trial court's default judgment entry. In clearly stated language, the summons provided Patel with instructions on how to respond to the complaint, which did not include waiting for the trial court's direction.

**Damages Hearing**

{¶8} The damages hearing on Brooks' complaint proceeded on October 23, 2020. Brooks and Patel testified at the hearing as to Brooks' damages pursuant to her nine causes of action. She testified that she began working for Patel at the Woodlawn Food Market on September 2, 2019 and she was fired on March 1, 2020. While she was employed, Brooks stated she worked 40 hours a week, approximately five days a week from 3:00 p.m. to 10:00 p.m. with four hours of overtime each week. She was paid $8.00 per hour in cash. Neither party kept records of the time she worked but texted with each other to determine Brooks' work schedule. The texts were entered into evidence.

{¶9} In her complaint, Brooks alleged that on December 25, 2019, Brooks and Patel were working alone in the Woodlawn Food Market. Patel's wife and family were out of the country. At closing time, Patel told Brooks she could select any alcoholic drink she wanted in the store and drink it while performing her closing duties. Brooks walked into the cooler to look for a beer, but she felt strange drinking alcohol on the job and advised Patel that she did not choose anything to drink. In lieu of having a drink, Brooks chose to stock the cooler. She entered the cooler and started stocking beer. Patel came into the cooler with a beer but could not open it. He asked Brooks to get a bottle opener with him from the office desk. Patel opened the beer, took a sip, and offered Brooks a sip, which she took but declined any further sips. She walked back into the cooler to resume her closing duties.

{¶10} Patel entered the cooler and approached Brooks. He placed his left hand on her breast and started to rub her breast. Brooks stepped away and asked him, "What the fuck?" Patel said he was sorry but kept begging and asking Brooks to please let him

touch her and to "go home" with him and how he could "take care" of Brooks. Patel kept repeating his pleas while he and Brooks stood in the cooler. Brooks could not leave because Patel was standing in front of the cooler's entrance. A few minutes later, Patel left the cooler but entered again with the same requests. Brooks managed to leave the cooler and walk to the store's front counter, followed by Patel. He repeatedly harassed her and begged Brooks with requests for sex until closing time. Patel then left the store. Brooks texted her boyfriend about what occurred, and he came to accompany her out of the store.

{¶11} Brooks sent Patel a text message letting him know his behavior was inappropriate, unappreciated, and he had no right to touch her. Patel responded to the text message apologizing and stating it would not happen again. Brooks had trouble returning to work and did not return until a week after December 25, 2019. Patel paid Brooks for the time she was off work.

{¶12} Patel's wife returned from India, and she worked in the store with Brooks. She was reserved and quiet with Brooks because she blamed Brooks for Patel's reason to not travel to India with his family. Brooks asked Patel if he had told his wife about the incident, and he responded that he had not advised his wife. In February, Patel's wife approached Brooks to ask if she could trust Brooks to open and close the store when the family went out of town again or if she needed to hire someone else. Brooks asked Patel's wife if her husband told her what happened on December 25, 2019. Patel's wife said he did not, so Brooks told Patel's wife about the December 25, 2019 incident.

{¶13} On March 1, 2020, Brooks was scheduled to work from 12:00 p.m. to 9:30 p.m. when Patel's wife fired her. Patel's wife said Brooks was lying about her husband.

At the hearing, Patel testified that his wife fired Brooks because Brooks complained about her husband's harassment.

{¶14} Brooks testified that after she was fired, she had trouble paying her bills and was almost evicted from her apartment. It affected her relationship with her child and boyfriend. While she was working at her new job, she was cautious about the people around her. She did not have insurance and could not afford mental health counseling. Brooks requested compensatory damages in the amount of $75,000 and punitive damages in the amount of $75,000, jointly and severally against Rakesh Patel and RKUK, Inc.

{¶15} After the damages hearing, the parties filed proposed findings of facts and conclusions of law.

**February 1, 2021 Judgment**

{¶16} On February 1, 2021, the trial court issued its judgment entry granting judgment in favor of Brooks against Rakesh Patel and RKUK, Inc., jointly and severally, totaling $75,000 in compensatory damages and $75,000 in punitive damages, plus interest from March 1, 2020 and court costs. The award was split as follows: (a) $37,500 compensatory damages and $37,500 punitive damages against Rakesh Patel and (b) $37,500 compensatory damages and $37,500 punitive damages against RKUK, Inc. The trial court further stated that the $75,000 compensatory damages award included $768.00, jointly and severally, as liquidated damages owed to Brooks by the defendants for failure to pay overtime wages under the Fair Labor Standards Act. The total damages award was $150,000, jointly and severally.

{¶17} A separate hearing was scheduled for March 12, 2021 to address the award of attorney fees under the Fair Labor Standards Act.

### Motion for Reconsideration / Amended Motion for Relief

{¶18} On March 1, 2021, Patel filed a motion for reconsideration, or, in the alternative, an amended motion for relief from the trial court's judgment entries filed on July 29, 2020 and February 1, 2021. Brooks filed a response on March 3, 2021.

{¶19} In his motion, Patel argued he was entitled to relief from the default judgment, and therefore the damages award, due to mistake, inadvertence, surprise, or excusable neglect. In this second motion, he provided further details regarding his background. He and his wife immigrated to the United States from India in 1988. English was his second language and for that reason, he did not understand the summons served with the complaint. Woodlawn Food Market, through RKUK, Inc., started operations in 2017. Patel argued he did have an attorney and had never been sued before, so he was unaware of the litigation procedures.

{¶20} Patel next contended the trial court's award of $75,000 in compensatory damages and $75,000 in punitive damages against Rakesh Patel and RKUK, Inc., jointly and severally, was unreasonable because it constituted a double recovery for Brooks.

{¶21} In support of his motion, Patel filed the September 22, 2020 deposition of Brooks, his amended affidavit, and a transcript of the October 23, 2020 damages hearing.

### April 1, 2021 Judgment

{¶22} On April 1, 2021, the trial court overruled the motion for reconsideration. It sustained its earlier judgment that Patel was not entitled to relief from default judgment pursuant to Civ.R. 60(B). The trial court next found the damages were reasonable and

the award of damages as "jointly and severally" did not give Brooks a double recovery. Rather, either defendant may be liable, and the plaintiff could obtain a judgment against any of the tortfeasors for the entire amount, after which the tortfeasors could apportion their liability and seeks contribution among themselves.

{¶23} The trial court permitted the parties to file proposed amendments to the language of the February 1, 2021 judgment entry to clarify the language of the damages award.

{¶24} The April 1, 2021 judgment entry included Civ.R. 54(B) language that it was a final appealable order with no just cause for delay.

### Proposed Amendments

{¶25} Patel filed a proposed amendment to the language of the February 1, 2021 judgment entry. Brooks filed a response opposing any amendment to the language of the February 1, 2021 judgment entry.

### April 12, 2021 Judgment Entry

{¶26} On April 12, 2021, the trial court filed its judgment entry rejecting Patel's proposed amendment to the February 1, 2021 judgment entry. The trial court ordered the "language of the Judgment Entry of February 1, 2021 to remain, as is, and the final appealable order."

### Notice of Appeal

{¶27} On April 29, 2021, Patel filed a notice of appeal of the April 1, 2021 and April 12, 2021 judgment entries of the trial court.

## ASSIGNMENTS OF ERROR

{¶28} Patel raises one Assignment of Error:

{¶29} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVELY AMEND[ED] MOTION FOR RELIEF FROM THIS COURT'S JUDGMENT ENTRY FILE[D] JULY 29, 2020 AND FEBRUARY 1, 2021."

## ANALYSIS

{¶30} Patel contends in his sole Assignment of Error that the trial court abused its discretion when it denied his motion for relief from default judgment pursuant to Civ.R. 60(B). He also argues the damages award was unsupported by the evidence.

## Default Judgment

{¶31} The Stark County Clerk of Courts originally served the complaint and copy of the summons upon Patel by certified mail. Patel refused the attempted certified service of the complaint and the copy of the summons, after which Brooks requested ordinary mail service. Pursuant to Civ.R. 4.6(C), "[t]he mailing shall be evidenced by a certificate of mailing which shall be completed and filed by the clerk. Answer day shall be twenty-eight days after the date of mailing as evidenced by the certificate of mailing." The docket shows the certificate of mailing was on April 21, 2020 and therefore, Patel's answer day would have been May 19, 2020. *See also* Civ.R. 12(A)(1).

{¶32} There is no dispute in this case that Patel failed to plead or otherwise defend within the time provided by May 19, 2020. With respect to the entry of a default judgment, Civ.R. 55(A) provides:

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefor * * *. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties.

{¶33} Brooks filed her motion for default judgment on May 21, 2020, which the trial court did not grant until July 29, 2020. "A default by a defendant * * * arises only when the defendant has failed to contest the allegations raised in the complaint and it is thus proper to render a default judgment against the defendant as liability has been admitted or 'confessed' by the omission of statements refuting the plaintiff's claims." *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn.*, 28 Ohio St.3d 118, 121, 502 N.E.2d 599 (1986) quoting *Resse v. Proppe*, 3 Ohio App.3d 103, 105, 443 N.E.2d 992 (8th Dist.1981).

## Civ.R. 60(B) v. Civ.R. 6(B)

{¶34} After the trial court granted default judgment on July 29, 2020, Patel filed a motion with the trial court entitled, "Motion to Vacate/Motion to Reinstate." The trial court characterized the motion as "bare bones" that did not cite any Ohio Civil Rule or statute as the basis of his request. (Judgment Entry, April 1, 2021). The trial court therefore considered as a motion for relief from judgment under Civ.R. 60(B).

{¶35} On appeal, Patel argues for the first time that the trial court should have considered his motion under Civ.R. 6(B), which states:

(B) Time: Extension. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Civ.R. 50(B), Civ.R. 59(B), Civ.R. 59(D), and Civ.R. 60(B), except to the extent and under the conditions stated in them.

Civ.R. 6(B)(2) allows a trial court "in its discretion" to extend the 28-day period to file an answer where the defendant files a motion outside of the 28-day period and demonstrates that the failure to timely plead "was the result of excusable neglect." *Lester v. Chivington*, 3rd Dist. Marion No. 9-15-21, 2015-Ohio-5446, ¶ 17.

{¶36} Our review of the record shows Patel did not raise the issue of Civ.R. 6(B) to the trial court. It is well-settled that issues not raised in the trial court may not be raised for the first time on appeal; such issues are deemed waived. *Smith v. Swanson*, 5th Dist. Stark No. 2003CA00140, 2004-Ohio-2652, ¶ 16, citing *Schottenstein v. Schottenstein*, Franklin App. No. 02AP-842, 2003-Ohio-5032, ¶ 8, internal citation omitted. We further find the trial court's use of Civ.R. 60(B) to analyze Patel's arguments that he should be relieved of the default judgment appropriate pursuant to Civ.R. 55(B), which states:

(B) Setting Aside Default Judgment. If a judgment by default has been entered, the court may set it aside in accordance with Rule 60(B).

### Civ.R. 60(B) & Default Judgment

{¶37} Civ.R. 60(B) states as follows:

On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or

proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

{¶38} In *GTE Automatic Electric Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus, the Supreme Court of Ohio held the following:

To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.

{¶39} The *GTE* factors are "independent and in the conjunctive, not the disjunctive." *DeChellis v. Estate of DeChellis*, 5th Dist. Stark No. 2020CA00025, 2020-Ohio-5111, 2020 WL 6375476, ¶ 16 quoting *Blaney v. Kerrigan*, 5th Dist. Fairfield No. 12-CA-86, 1986 WL 8646, *2 (Aug. 4, 1986) quoting *GTE Automatic Elec., Inc., supra* at 150-151. "Failing to meet one is fatal, for all three must be satisfied in order to gain relief * * *." *Id.*

{¶40} A motion for relief from judgment under Civ.R. 60(B) lies in the trial court's sound discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 514 N.E.2d 1122 (1987). To find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**Excusable Neglect**

{¶41} Patel first argues he was entitled to relief from default judgment pursuant to Civ.R. 60(B)(1) due to mistake, inadvertence, surprise, or excusable neglect. The Ohio Supreme Court has yet to develop a definitive definition of excusable neglect. However, it has described it in the negative stating, "the inaction of a defendant is not 'excusable neglect' if it can be labeled as a 'complete disregard for the judicial system.'" *Kay v. Marc Glassman, Inc.*, 76 Ohio St.3d 18, 20, 665 N.E.2d 1102 (1996), quoting *GTE Automatic Elec., Inc.,* 47 Ohio St.2d at 153, 351 N.E.2d 113. It has been held that "[o]nly where the failure to respond is coupled with a complete lack of notice of the original motion may excusable neglect lie." *Stoller v. TRST, LLC.*, 5th Dist. Fairfield No. 2019 CA 00051, 2020-Ohio-3041, ¶ 16 quoting *Chuck Oeder Inc. v. Bower*, 9th Dist. No. 23785, 2007-Ohio-7032, at ¶ 8, quoting *Zimmerman v. Rourke*, 9th Dist. No. 04CA008472, 2004-Ohio-6075, at ¶ 9. Excusable neglect has been further defined as some action "not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident." *Emery v. Smith*, 5th Dist. Stark Nos. 2005CA00051, 2005CA00098, 2005-Ohio-5526, ¶ 16 quoting *Vanest v. Pillsbury Co.* (1997), 124 Ohio App.3d 525, 536 fn. 8, 706 N.E.2d 825.

{¶42} "In addition, '[w]hile unusual or special circumstances can justify neglect, if a party could have controlled or guarded against the happening or event he later seeks to excuse, the neglect is not excusable.'" *Sandifer v. Yoder*, 5th Dist. Tuscarawas No. 2015 AP 02 0008, 2015-Ohio-4270, ¶ 20, quoting *National City Bank v. Kessler*, 10th Dist. No. 03AP–312, 2003–Ohio–6938, ¶ 14, *See also Stevens v. Stevens*, 5th Dist. Fairfield

No. 16-CA-17, 2016-Ohio-7925, ¶ 14 ("Excusable neglect is not present if the party seeking relief could have prevented the circumstances from occurring.")

{¶43} The determination of whether neglect is excusable or inexcusable must take into consideration all the surrounding facts and circumstances, and courts must be mindful that cases should be decided on their merits, where possible, rather than procedural grounds. *Griffey v. Rajan*, 33 Ohio St.3d 75, 79–81, 514 N.E.2d 1122 (1987).

{¶44} Patel contends his failure to answer or otherwise respond to the complaint was due to his lack of proficiency with the English language and his unfamiliarity with the legal system; therefore, he did not show a complete disregard for the judicial system. The trial court rejected Patel's arguments as to excusable neglect in its September 29, 2020 judgment entry and April 1, 2021 judgment entry.

{¶45} The trial court examined Patel's claim that he did not understand the legal system. Upon review of the summons served with the complaint, the trial court found it included instructions on how Patel was to respond to the complaint. While Patel refused certified mail service of the summons and complaint, ordinary mail service of the summons and complaint was completed on April 21, 2020. We note that Patel also refused certified mail service of the trial court's default judgment entry. Patel's refusal of service and subsequent failure to answer or otherwise respond to the complaint was due to his own willful disregard of the process of the court, not the consequence of some unexpected or unavoidable hindrance or accident.

{¶46} Further, the operative facts in this case do not establish excusable neglect due to Patel being a native of India. The record in this case showed Patel had a sufficient command of the English language. He moved to the United States in 1988. He has

operated the Woodlawn Food Market, owned by Patel's corporation RKUK, Inc., since 2017. During the damages hearing, Patel did not require an interpreter and he understood counsel's questions to respond accordingly. Patel presented text messages he exchanged with Brooks as evidence at the damages hearing, which showed Patel understood the English language sufficiently to determine Brooks' weekly work schedule. There was no evidence of a language barrier that unavoidably prevented Patel from participating in the proceedings after notification of the complaint. *See Suon v. Khan Mong*, 10th Dist. Franklin No. 17AP-879, 2018-Ohio-4187, ¶ 28 (appellant's lack of familiarity with legal proceedings, nor his inability to read English, amounted to operative facts which would establish excusable neglect when he filed a pro se answer to the complaint); *Gamble Hartshorn, LLC v, Lee*, 10th Dist. Franklin No. 17AP-35, 2018-Ohio-980, ¶ 27-31 (holding that the appellant's failure to respond to the motion for summary judgment "based on his contention that he was not proficient with the English language, and he lacked familiarity with the legal system," did not amount to excusable neglect).

{¶47} As Patel failed to present operative facts which would support a finding of excusable neglect under Civ.R. 60(B)(1), the trial court did not abuse its discretion in denying Patel's Civ.R. 60(B) motion for relief from judgment.

**Meritorious Defense**

{¶48} To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order

or proceeding was entered or taken. Patel next argues the trial court abused its discretion when it found Patel failed to present a meritorious defense to Brooks' causes of action.

{¶49} We determined the trial court did not abuse its discretion when it found Patel was not entitled to relief pursuant to Civ.R. 60(B)(1). A failure to establish any one of the three *GTE* requirements will cause the motion for relief from judgment to be overruled. *Van Wert v. Akron Metro. Regional Transit Auth.*, 5th Dist. Stark No. 2016CA00052, 2016-Ohio-8072, 2016 WL 7159144, ¶ 31 citing *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988). Accordingly, it is unnecessary for this Court to determine whether the trial court abused its discretion as to the element of meritorious defense.

**Damages**

{¶50} Brooks finally contends the trial court's determination of damages was in error, as to both the amount and the manner of award. At the damages hearing, Brooks requested $75,000 in compensatory damages and $75,000 in punitive damages, for a total damages award of $150,000. The trial court awarded damages as follows:

Therefore, it is Ordered, Adjudged and Decreed that judgment is granted in favor of the Plaintiff, Kristina Brooks against the Defendants, RKUK, Inc. dba Woodlawn Food Market and Rakesh Patel, jointly and severally, totaling $75,000 in compensatory damages and $75,000 in punitive damages, plus interest from March 1, 2020 and court costs, awarded as follows:

a) The amount of $37,500 compensatory damages against Defendant Rakesh Patel and $37,500 punitive damages against Defendant Rakesh Patel; and

b) The amount of $37,500 in compensatory damages against Defendant

RKUK, Inc. and $37,500 punitive damages against Defendant RKUK, Inc.

It is further ordered that the foregoing award of $75,000 compensatory

damages includes the sum of $768.00 jointly and severally against all

Defendants, which is the liquidated damages owed to the Plaintiff by the

Defendants for failure to pay overtime wages under FLSA.

(Judgment Entry, Feb. 1, 2021).

{¶51} When a defendant fails to answer, default judgment is warranted because liability has been admitted "by the omission of statements in a pleading refuting the plaintiff's claims." *Berube v. Richardson*, 8th Dist. No. 104651, 2017-Ohio-1367, 89 N.E.3d 85, 2017 WL 1365458, ¶ 9 quoting *Girard v. Leatherworks Partnership*, 11th Dist. Trumbull No. 2004-T-0010, 2005-Ohio-4779, 2005 WL 2211079, ¶ 38. Therefore, once default judgment has been entered, the only remaining triable issue is the amount of damages. *Id*.

{¶52} Under Civ.R. 54(C), a trial court may not grant default judgment "different in kind from or exceed in amount" that which is stated in the demand for judgment. Civ.R. 54(C). Civ.R. 55(A) provides when a hearing on damages is necessary:

If, in order to enable the court to enter judgment or to carry it into effect, it

is necessary to take an account or to determine the amount of damages or

to establish the truth of any averment by evidence or to make an

investigation of any other matter, the court may conduct such hearings or

order such references as it deems necessary and proper and shall when

applicable accord a right of trial by jury to the parties.

{¶53} Thus, pursuant to Civ.R. 55(A), the trial court has the discretion to conduct a hearing following an entry of default judgment to determine the measure of damages. *Skiver v. Wilson,* 8th Dist. No. 106560, 2018-Ohio-3795, 119 N.E.3d 969, 2018 WL 4521021, ¶ 14 citing *Malaco Constr. v. Jones*, 10th Dist. Franklin No. 94APE10-1466, 1995 WL 506026, 8 (Aug. 24, 1995); *Buckeye Supply Co. v. N.E. Drilling Co.*, 24 Ohio App.3d 134, 136, 493 N.E.2d 964 (9th Dist.1985) ("It has always been within the discretion of the trial court to determine whether further evidence is required to support a claim against a defaulting defendant.").

**Compensatory and Punitive Damages**

{¶54} In this case, Brooks filed a complaint based on negligence and statutory violations, requesting compensatory and punitive damages. Where the judgment is not liquidated or only partially liquidated, the court must hold a hearing on the damages. *Skiver, supra* citing *Mid-America Acceptance Co. v. Reedy*, 11th Dist. Lake No. 89-L-14-072, 1990 WL 94816, at 2 (June 29, 1990), citing *Maintenance Unlimited, Inc. v. Salemi*, 18 Ohio App.3d 29, 480 N.E.2d 113 (8th Dist.1984). "Ohio law requires the presentation of proof of damages for an unliquidated claim before any can be awarded." *Faulkner v. Integrated Servs. Network, Inc.*, 8th Dist. Cuyahoga Nos. 81877 and 83083, 2003-Ohio-6474, 2003 WL 22861771, ¶ 26 (finding the trial court's failure to hold an evidentiary hearing error where a determination of damages "necessarily require[d] consideration of factors outside the 'written instrument'").

{¶55} Before a money judgment may be awarded, the plaintiff must establish evidence of the damages. *Clark v. Enchanted Hills Community Assn.*, 4th Dist. Highland No. 19CA4, 2020-Ohio-553, 2020 WL 807069, ¶ 10 citing *Labonte v. Labonte,* 4th Dist.

Meigs No. 07CA15, 2008-Ohio-5086, ¶ 19. "Ohio courts have found that, once a right to damages has been established, that right cannot be denied because damages are incapable of being calculated with mathematical certainty. *Pennant Moldings, Inc. v. C & J Trucking Co.* (1983), 11 Ohio App.3d 248. However, the amount of damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture or surmise. *See also*: 30 Ohio Jurisprudence 3d, 14 Damages 24-5." *Pingue v. Pingue*, 5th Dist. Delaware No. 95CAF02006, 1995 WL 768535, *10. In conducting a hearing on damages, the trial court has broad discretion in assessing the weight and credibility of the evidence of damages. *Arendt v. Price*, 8th Dist. Cuyahoga No. 101710, 2015-Ohio-528, ¶ 16.

{¶56} "A reviewing court ordinarily will uphold a trial court's damage award if it is not against the manifest weight of the evidence." *Clark v. Enchanted Hills Community Assn.*, 4th Dist. Highland No. 19CA4, 2020-Ohio-553, 2020 WL 807069, ¶ 9 citing *Downard v. Gilliland*, 4th Dist. Jackson No. 07CA11, 2008-Ohio-3155, at ¶ 7. *See Shemo v. Mayfield Hts.*, 88 Ohio St.3d 7, 10, 722 N.E.2d 1018 (2000); *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. This standard of review is highly deferential and even "some" evidence is sufficient to support a court's judgment and to prevent a reversal. *Id.* citing *Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997); *Willman v. Cole*, 4th Dist. Adams No. 01 CA725, 2002-Ohio-3596, ¶ 24. "[A]n appellant's disagreement with the trier of fact as to the appropriate amount of damages is not grounds for reversal." *Arendt, supra*; *Sotnyk v. Guillenno*, 6th Dist. Lucas No. L-13-1198, 2014-Ohio-3514, 2014 WL 4049863, ¶ 11.

{¶57} In his appellate brief, Patel contends he is entitled to relief from judgment because the damages award was speculative, duplicative, and unsupported by the evidence. In *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, the Ohio Supreme Court stated that:

> In *Fantozzi* [*v. Sandusky Cement Prods. Co.*], 64 Ohio St.3d [601], at 612, 597 N.E.2d 474 [1992], we defined "compensatory damages" in such a way that it includes both economic and noneconomic damages: "Compensatory damages are defined as those which measure the actual loss, and are allowed as amends therefor. For example, compensatory damages may, among other allowable elements, encompass direct pecuniary loss, such as hospital and other medical expenses immediately resulting from the injury, or loss of time or money from the injury, loss due to the permanency of the injuries, disabilities or disfigurement, and physical and mental pain and suffering." Usually awarded for pain and suffering, noneconomic damages can also include compensation for loss of ability to perform usual functions; loss of consortium, mental anguish, or other intangible loss; and humiliation or embarrassment.

(Footnotes omitted.) *Cavins v. S & B Health Care, Inc.*, 2015-Ohio-4119, 39 N.E.3d 1287, (2nd Dist.), ¶ 134 quoting *Whitaker* at ¶ 19. "Under Ohio law, even without proof of contemporaneous physical injury, one may recover for mental anguish, humiliation or embarrassment." *Cavins* at ¶ 136 quoting *Brooks v. Montgomery Care Ctr.*, 1st Dist. Hamilton No. C–130838, 2014-Ohio-4644, 2014 WL 5361549, ¶ 12, citing *Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131, 447 N.E.2d 109 (1983), syllabus.

{¶58} At the damages hearing, Brooks testified as to the events giving rise to her claims for which Patel has admitted liability "by the omission of statements in a pleading refuting the plaintiff's claims." She stated that without her consent, Patel (1) touched and rubbed her breast (assault/battery and sexual harassment), (2) asked her to come home with him and let him touch her, and (3) while he touched Brooks, blocked her from leaving the cooler (false imprisonment). When Brooks refused Patel's advances and told Patel's wife about her husband's actions, Brooks was fired (retaliation). She testified that Patel's actions and her termination included affected every aspect of her life:

Emotionally, I had been in some trouble and trying to pick myself out of it, and I was able to finally get this job to help pay my bills and get myself back to where I was needing to be. So without that job, it put me behind. I couldn't get my bills paid, it took me away from seeing my daughter more. I was almost evicted from my apartment. I couldn't pay my utility bills. It affected my relationship with my boyfriend. The trust with any man. When I'm at work, if anyone comes around me, it makes me second-guess and kind of watch over my shoulder as to what could possibly happen. It affected a lot so, and it still is so …

(T. 26-27). Brooks was unable to seek medical or professional assistance for the events she described because her job did not offer insurance. She could not afford counseling after the incident, but she also did not check out agencies in the county to determine if she could get free mental health counseling. (T. 27, 32).

{¶59} Under these circumstances, there was sufficient proof of compensatory damages to support the trial court's calculation of damages. Patel admitted that Brooks

was terminated because she complained about his sexual harassment. Patel's sexual harassment and termination of her employment caused her to suffer emotional impact, inconvenience, and monetary suffering.

{¶60} As to punitive damages, we find that Patel has not cited in his appellate brief to any case law or statutory law to support his argument that the punitive award was against the manifest weight of the evidence or unsupported by law. It is not the duty of an Ohio appellate court to create arguments for the parties and search the record for evidence to support them. *Salameh v. Doumet*, 2019-Ohio-5391, 151 N.E.3d 83, (5th Dist.), ¶ 60 citing *Colvin v. Colvin*, 5th Dist. Guernsey No. 18 CA 27, 2019-Ohio-2209, 2019 WL 2375394, ¶ 40 citing *Washek v. Washek*, 5th Dist. Fairfield No. 18 CA 22, 2019-Ohio-1504, 2019 WL 1785411, ¶ 21 citing *Sisson v. Ohio Department of Human Services*, 9th Dist. Medina No. 2949–M, 2000 WL 422396.

**Fair Labor Standards Act / Failure to Pay Overtime**

{¶61} Patel argues the trial court's determination of damages as to Brooks' overtime wages was in error. Brooks contended she was entitled to $768.00 in damages due to Patel's failure to pay her overtime wages. At the damages hearing, the evidence showed that Patel did not require Brooks to complete a time sheet or clock in. Brooks and Patel determined her work schedule through text messages. The testimony from Patel and Brooks conflicted as to Brooks' hourly work schedule. It was agreed that Patel paid Brooks $8.00 per hour in cash.

{¶62} Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): The underlying rationale of

giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. The trial court determined that Brooks' testimony was more credible than Patel as to her work schedule and overtime hours. We defer to the trial court's determination of credibility and find the evidence supports the damages award of $768.00.

### Joint and Several Liability

{¶63} In his final argument, Patel contends the trial court erred when it found Rakesh Patel and RKUK, Inc. jointly and severally liable, thereby enabling a double recovery for Brooks. We disagree.

{¶64} We affirmed the trial court's decision to deny Patel's motion for relief from judgment. When the defendant has failed to contest the allegations raised in the complaint and it is proper to render a default judgment against the defendant as liability has been admitted or confessed by the omission of statements refuting the plaintiff's claims. Because liability has been established pursuant to default judgment, Rakesh Patel and RKUK, Inc. are barred from arguing they are not liable for the independent acts of the other.

{¶65} As to joint liability, the Ohio Supreme Court clarified the meaning of the phrase in *Meyer v. Cincinnati Street Ry. Co*, 157 Ohio St. 38, 104 N.E.2d 173 (1952):

> The concept that 'joint liability' can arise only from the commission of a 'joint tort' is fundamentally unsound. Joint *liability* can arise from the concurrent commission of independent wrongful acts, each having causal connection with the injury or damage complained of.

This principle is recognized in the opinion in *Wery v. Seff*, 136 Ohio St. 307, 311, 25 N.E.2d 692, 694, where Judge Zimmerman stated: 'The rule recognized by the majority of courts is that when the negligence of two or more persons concur to produce a single indivisible injury, such persons are jointly and severally liable, and the existence of common duty, common design or concerted action is not essential.'

In 1 Cooley on Torts (4 Ed.), 277, Section 86, the author states: 'The weight of authority will, we think, support the more general proposition, that, where the negligence of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design or concerted action.' Citing decisions from many states. See, also, Prosser on Torts, 1092, Section 109 et seq.

(Emphasis sic.) *Meyer v. Cincinnati St. Ry. Co.*, 157 Ohio St. 38, 41, 104 N.E.2d 173, 175, (1952).

{¶66} "When parties are jointly and severally liable, each defendant may be held liable." *Edwards v. Ohio Inst. of Cardiac Care*, 170 Ohio App.3d 619, 2007-Ohio-1333, 868 N.E.2d 721 (2nd Dist.), ¶ 75 citing *Shoemaker v. Crawford*, 78 Ohio App.3d 53, 66–67, 603 N.E.2d 1114 (10th Dist.1991). The plaintiff may obtain a judgment against any of the joint tortfeasors for the entire amount, and the tortfeasors may apportion their liability and seek contribution among themselves. *Id.*

{¶67} While the trial court equally divided the damages between the defendants, it ultimately awarded Brooks $75,000 in compensatory damages and $75,000 in punitive

damages against the defendants, jointly and severally. The trial court clarified its damages award in the April 1, 2021 judgment entry stating it did not intend to permit Brooks to receive a double recovery. Brooks was entitled to one recovery from either or both defendants pursuant to the meaning of joint and several liability.

{¶68} Accordingly, Patel's sole Assignment of Error is overruled.

## CONCLUSION

{¶69} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Baldwin, P.J. and

Wise, Earle, J., concur.